**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| 107 4th Ave LLC *et al.*, | Case No. 13-41048 (CEC) |
| Debtors. | (Jointly Administered) |

## SECOND AMENDED PLAN OF REORGANIZATION

**Dated: February 21, 2014**

# TABLE OF CONTENTS

**Page**

DEFINITIONS...........................................................................................................1

ARTICLE I UNCLASSIFIED ADMINISTRATIVE AND TAX CLAIMS....................................5

    1.    Administrative Claims..................................................................5

    2.    United States Trustee Fees. ...........................................................6

    3.    Tax Claims. ..............................................................................6

ARTICLE II CLASSIFICATION OF CLAIMS AND  INTERESTS AND TREATMENT
THEREOF...............................................................................................................6

ARTICLE III MEANS OF EXECUTION OF THE PLAN ............................................................10

    A.    The Asset Sale..........................................................................10

    B.    Sources of Consideration for Plan Distributions. ....................................11

    C.    Exemption From Certain Transfer Taxes.................................................11

ARTICLE IV EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................12

ARTICLE V SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS ...........................................................................................................12

    A.    Discharge Of Claims And Termination Of Interests..................................12

    B.    Release Of Liens.......................................................................13

    C.    Releases By Debtors...................................................................13

    D.    Releases By Holders Of Claims And Interests. ........................................14

    E.    Exculpation. ............................................................................15

    F.    Injunction. ..............................................................................15

ARTICLE VI CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ..............16

    A.    Conditions Precedent to Effective Date. ...............................................16

    B.    Waiver of Conditions. .................................................................18

ARTICLE VII SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ..................................18

ARTICLE VIII IMMEDIATELY BINDING EFFECT...............................................................18

ARTICLE IX PROVISION FOR SUPERVISION OF THE PLAN AND RETENTION OF
JURISDICTION .......................................................................................................18

# DEFINITIONS

1.1    **"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.2    **"Affiliate"** shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.3    **"Allowed Amount"** means the dollar amount of an Allowed Claim.

1.4    **"Allowed Claims"** means any claim which has been filed on or before the date designated by the Court or which has been or which is hereafter listed by the Debtors as liquidated in the amount and not disputed or contingent and in either case a Claim to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Court, or as to which any objection has been determined by any order or judgment of the Court that is no longer subject to appeal.

1.5    **"Assumed Contract"** means an executory contrary or unexpired lease, including, but not limited to, any unexpired leases at non-rent regulated prices that expire on or before October 31, 2014, to which a Debtor is a party and that is designated in the Plan Supplement to be assumed as of the Effective Date.

1.6    **"Bankruptcy Code"** means Title 11 of the United States Code, as the same was in effect on the Filing Date.

1.7    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Court.

1.8    **"Bar Date"** means September 6, 2013, which was the deadline to file proofs of claim in the Chapter 11 Case as provided by order of the Court.

1.9    **"Cash"** means lawful currency of the United States and cash equivalents.

1.10    **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

1.11    **"Chapter 11 Cases"** means the cases of the reorganization of the Debtors commenced by voluntary petitions under Chapter 11 on February 27, 2013 and now pending in this Court, which cases, by order dated April 11, 2013, are being jointly administered under the caption *In re 107 4th Avenue LLC, et al.*, Case No. 13-41048-cec (Jointly Administered).

1.12    **"Claim"** means a claim against a Debtor or its property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

1.13    **"Class"** means a group of Claims or Interests, which are substantially similar to each other as classified pursuant to this Plan.

1.14    **"Confirmation of the Plan"** means the entry of an order of the Court confirming the Plan in accordance with Chapter 11.

1.15    **"Confirmation Date"** means the date of Confirmation of the Plan.

1.16    **"Confirmation Hearing**" means the hearing held by the Court concerning Confirmation of the Plan pursuant to the Bankruptcy Code, as such hearing may be continued from time to time.

1.17    **"Confirmation Order"** means the order of the Court confirming this Plan pursuant to the Bankruptcy Code.

1.18    **"Court"** means The United States Bankruptcy Court the Eastern District of New York acting in this case.

1.19    **"Debtors"** means collectively, 107 4th Avenue LLC, 109 4th Avenue LLC, 109A 4th Avenue LLC, 111-113 4th Avenue LLC, QuatroTLLC, and Forte Investment LLC.

1.20    **"Disbursing Agent"** means Rosenberg, Musso & Weiner or such other person as may be designated by the Court.[1]

1.21    **"Disputed Claim"** means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

1.22    **"Distribution Date**" means the Effective Date.

1.23    **"Effective Date"** means the date on which each condition set forth in Article VI.A. hereof has been satisfied or waived pursuant to Article VI.B. hereof.

1.24    **"Equity Security"** shall have the meaning set forth in Section 101(16) of the Bankruptcy Code.

---

[1]    The Distributing Agent will not need to post a bond.

1.25    "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.26    "**Estate**" means the bankruptcy estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.27    "**Excluded Assets**" means the property owned by Debtor Forte Investments LLC located at 625 Baltic Street, Brooklyn, New York.

1.28    "**Filing Date**" means February 27, 2013.

1.29    "**Final Order**" means, as applicable, an order or judgment of the Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided*, the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order shall not prevent such order from being a Final Order; provided, further, the Debtors reserve the right to waive any appeal period with express prior written consent of the Purchaser.

1.30    "**Holder**" means the Entity holding the beneficial interest in a Claim or Interest.

1.31    "**Insider**" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

1.32    "**Interests**" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including any is**sued or un**issued share of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, including membership interests in limited liability companies and partnership interests in partnerships, and any option, warrant  or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date, including, without limitation, any Equity Security.

1.33    "**JV Parties**" means JDS Fourth Avenue LLC and Domenick Tonacchio.

1.34    "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code and shall include all mortgages, deeds of trust, pledges, other security interests, encumbrances, and charges.

1.35    "**Plan**" means this Plan of Reorganization.

1.36    "**Plan Supplement**" means the supplemental appendix to this Plan, to be filed no later than five (5) calendar days prior to the Confirmation Hearing, which will contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, which

supplemental appendix may be amended, supplemented or modified from time to time prior to the Effective Date in accordance with the terms of this Plan and the Confirmation Order.

1.37    **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim; and (b) a Tax Claim.

1.38    **"Purchase Agreement**" means the asset purchase agreement setting forth the terms and conditions of the Purchaser's acquisition of the Sale Assets from the Debtors, which shall be executed on the Effective Date.

1.39    "**Purchaser**" means Fourth Avenue Property Owner LLC, which is a partnership formed by the JV Parties**.**

1.40    **"Rejected Contract**" means an executory contrary or unexpired lease to which a Debtor is a party and that is designated in the Plan Supplement to be rejected as of the Effective Date.

1.41    **"Reorganized Debtors"** means the Debtors on or after the Effective Date.

1.42    "**Sale Assets**" means the Debtors' rights, titles and interests incident to ownership, use and occupancy of the properties located at 107 Fourth Avenue, Brooklyn, New York, 109 Fourth Avenue, Brooklyn, New York, 109A Fourth Avenue, Brooklyn, New York, 111-113 Fourth Avenue, Brooklyn, New York, 613 Baltic Street, Brooklyn, New York, 615 Baltic Street, Brooklyn, New York and 617 Baltic Street, Brooklyn, New York, and as more specifically described in the Purchase Agreement.

1.43    "**Sale Proceeds**" means all Cash proceeds and other consideration deliverable to the Debtors from the Sale Transaction in accordance with the Purchase Agreement.

1.44    "**Sale Transaction**" means the sale of the Sale Assets to Purchaser under the terms and conditions of the Purchase Agreement.

1.45    "**Secured Claim**" means, when referring to a Claim, (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) Allowed pursuant to the Plan as a Secured Claim.

1.46    **"Tax Claim"** means a Claim by a governmental unit entitled to a priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

1.47    "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code

1.48    "**United States Trustee**" means the United States Trustee for the Eastern District of New York.

1.49    "**United States Trustee Fees**" means outstanding fees due to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

1.50    "**Unsecured Claim**" means a claim against the Debtors that is not an Administrative Claim, Tax Claim, Priority Claim or Secured Claim, and shall include, without limitation, any rejection damage claims.

## ARTICLE I

## <u>UNCLASSIFIED ADMINISTRATIVE AND TAX CLAIMS</u>

Administrative and Tax Claims consist of all Administrative and Tax Claims against the Debtors. As provided by Section 1123(a)(1) of the Bankruptcy Code, Administrative, United States Trustee Fees and Tax Claims against the Debtors shall not be classified for purposes of voting or receiving Distributions under the Plan.  All such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article.

1.    <u>Administrative Claims</u>.

Each holder of an Allowed Administrative Claim, other than current payables, shall be paid in full on the Effective Date or upon such other terms that may be agreed upon by the Holder of such Claim and the Debtor.  Current payables, which are trade debts incurred by the Debtor in the ordinary course of business and not expenses of administration in this case or unpaid post-petition taxes, will be paid in the ordinary course of business according to the terms established between the Debtor and such creditors.  Professional fees for the Debtors' attorneys are estimated at $25,000.00. The Debtors are current on all of their obligations and have no current payables.

2.      United States Trustee Fees.

All outstanding United States Trustee Fees will be paid on the Effective Date.  The

Reorganized Debtors shall pay all statutory fees due and payable under 28 U.S.C. §1930, plus

accrued interest under 31 U.S.C. §3717 on all disbursements, including plan payments and

disbursements inside and outside of the ordinary course of business, until entry of a final decree,

dismissal, or conversion of the case to chapter 7. Until entry of a final decree, dismissal, or

conversion of the case to Chapter 7, the Debtors and/or the Distributing Agent shall file a post-

confirmation operating report on a quarterly basis. The Debtors will file an application and

proposed order for a final decree within fourteen (14) days of full administration of the Debtors'

estates.

3.      Tax Claims.

Tax Claims consist of Claims of governmental units entitled to priority treatment, but does

not include secured claims for real estate taxes or water charges, to wit. The Debtors are not aware

of any priority tax claims and as of the date of this Plan, no priority tax claims have been filed in

the Chapter 11 Cases.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND
INTERESTS AND TREATMENT THEREOF**

Claims against the Debtors and interests in the Debtors (other than Administrative, United

States Trustee Fees, and Tax Claims) are hereby classified as follows:

(a)     Class 1 - Annapurna Secured Claim

      (i)      **Classification**: Class 1 consists of the Secured Claim of Annapurna Funding LLC ("Annapurna"), related to notes and mortgages on the properties located at 107 Fourth Avenue, 109 Fourth Avenue, 109A Fourth Avenue

LLC, 111 -113 Fourth Avenue, and 613 Baltic Street, all in Brooklyn, New York (the "Annapurna Secured Claim").

(ii) **Treatment**: The Annapurna Secured Claim shall be Allowed in the amount equal to the outstanding principal plus $400,000 on account of all accrued interest and late charges, plus any fees incurred to the extent allowed under 506(b) of the Bankruptcy Code, plus fifty-percent (50%) of any additional interest, calculated at the default rate, that accrues from April 28, 2014, through the Effective Date. Except to the extent that the Holder of the Annapurna Secured Claim agrees to different treatment, on the Effective Date, the Allowed Annapurna Secured Claim shall receive payment in full, in Cash.

(iii) **Voting**: Class 1 is Unimpaired, and the Holder of the Class 1 Annapurna Secured Claim conclusively is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Class 1 Annapurna Secured Claim is not entitled to vote to accept or reject the Plan.

(b) Class 2 - Capital One Secured Claim

(i) **Classification**: Class 2 consists of the Secured Claim of Capital One, National Association ("Capital One"), which holds a mortgage on the property located at 617 Baltic Street, Brooklyn, New York (the "Capital One Secured Claim").

(ii) **Treatment:** The Capital One Secured Claim shall be Allowed in the amount of $573,927.58, the full amount set forth in its proof of claim, plus any interest and fees incurred to the extent allowed under 506(b) of the Bankruptcy Code. Except to the extent that the Holder of the Capital One Secured Claim agrees to different treatment, on the Effective Date, Capital One Secured Claim will be paid in full in Cash on its Allowed Secured Claim.

(iii) **Voting**: Class 2 is Unimpaired, and the Holder of the Class 2 Capital One Secured Claim conclusively is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Class 2 Capital One Secured Claims is not entitled to vote to accept or reject the Plan.

(c)     Class 3 – America's Servicing Company Secured Claim

    (i)     **Classification**: Class 3 consists of the Secured Claim of America's Servicing Company ("America's Servicing"), which holds a mortgage on the property owned by Forte Investments LLC at 625 Baltic Street, Brooklyn, New York (the "America's Servicing Company Secured Claim").

    (ii)     **Treatment**: Except to the extent that the Holder of the America's Servicing Company Secured Claims agrees to different treatment, on the Effective Date the Allowed America's Servicing Company Secured Claim shall be reinstated for the benefit of the Holder thereof.

    (iii)     **Voting**: Class 3 is Unimpaired, and the Holder of the Class 3 America's Servicing Company Secured Claim conclusively is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Class 3 America's Servicing Company Secured Claims is not entitled to vote to accept or reject the Plan.

(d)     Class 4 - CLC Secured Claim

    (i)     **Classification**: Class 4 consists of the Secured Claim of CLC Consumer Services Co. ("CLC"), which holds a mortgage on the property owned by Forte Investments LLC at 625 Baltic Street, Brooklyn, New York, junior to the mortgage held by America's Servicing (the "CLC Secured Claim")

    (ii)     **Treatment:** Except to the extent that the Holder of the CLC Secured Claims agrees to different treatment, on the Effective Date the CLC Secured Claim shall be reinstated for the benefit of the Holder thereof.

    (iii)     **Voting**: Class 4 is Unimpaired, and the Holder of the Class 4 CLC Secured Claims conclusively is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Class 4 CLC Secured Claim is not entitled to vote to accept or reject the Plan.

(e)     Class 5 - Tissa Secured Claim

    (i)     **Classification**: Class 5 consists of the Secured Claim of Tissa Funding Corp., ("Tissa"), which holds mortgages on the properties owned by the Debtors and located at 107 Fourth Avenue, 109 Fourth Avenue, 109A Fourth Avenue LLC, 111 Fourth Avenue, 613 Baltic Street, 615 Baltic Street, 617 Baltic Street, and 625 Baltic Street all in Brooklyn, New York, which mortgages are junior to the mortgages held by Annapurna, Capital One, America's Servicing, and CLC (the "Tissa Secured Claim").

(ii)     **Treatment:** The Tissa Secured Clam shall be Allowed in the amount of $2,526,486.08, plus all additional interest and any fees incurred to the extent allowed under 506(b) of the Bankruptcy Code.  Except to the extent that the Holder of the Tissa Secured Claim agrees to different treatment, on the Effective Date, the Holder of the Allowed Tissa Secured Claim shall receive payment in full, in Cash of its Allowed Secured Claim.

(iii)     **Voting**: Class 5 is Unimpaired, and the Holder of the Class 5 Tissa Secured Claims conclusively is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Class 5 Tissa Secured Claim is not entitled to vote to accept or reject the Plan.

(f)     Class 6 – Unsecured Claims

(i)     **Classification**: Class 6 consists of all Unsecured Claims.

(ii)     **Treatment**: Except to the extent that a Holder of an Unsecured Claim agrees to different treatment, on the Effective Date, each holder of an Allowed Unsecured Claims shall receive payment in full, in Cash of its Allowed Claim; provided, however, that no distribution shall be made to any Insider holding an Unsecured Claim, each of which has agreed to waive its claim against the Debtors if the Plan is confirmed.  The Debtors estimate that the non-Insider Unsecured Claims total approximately $190,000.

(iii)     **Voting**: Class 6 is Unimpaired, and Holders of Class 6 Unsecured Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 6 Unsecured Claims are not entitled to vote to accept or reject the Plan.

(g)     Class 7 – Equity Security Holders

(i)     **Classification**: Class 7 consists of Domenick Tonacchio, the Debtors' sole Equity Security Holder.

(ii)     **Treatment**:  The Equity Security Holder shall retain his interest in the Reorganized Debtors.

(iii)     **Voting**: Class 7 is Unimpaired, and the Equity Security Holder conclusively is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Equity Security Holder is not entitled to vote to accept or reject the Plan.

# ARTICLE III

# MEANS OF EXECUTION
## OF THE PLAN

**A.    The Asset Sale.**

On the Effective Date, the Debtors shall be authorized to consummate the Sale Transaction and, among other things, the Sale Assets shall be transferred to and vest in Purchaser free and clear of all Liens on the Sale Assets, pursuant to the terms of the Purchase Agreement and Confirmation Order, with all Liens on the Sale Assets attaching to the Sale Proceeds.

The actions to implement the Sale Transactions may include, among other things: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (d) all other actions that the applicable entities or Purchaser determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and

compromise or settle any Claims, Interests, or causes of action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Neither Purchaser, the JV Parties nor any of their Affiliates shall be deemed to be a successor of the Debtors.

        **B.**      **Sources Of Consideration For Plan Distributions.**

All consideration necessary for the Debtors or the Disbursing Agent to make payments or distributions pursuant hereto shall be obtained from the Sale Proceeds and the Debtors' or Reorganized Debtors' Cash on hand on the Effective Date.

        **C.**      **Exemption From Certain Transfer Taxes.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or Interests, or the issuance, transfer or exchange or assignment of debt and/or Interests under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any contract, lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes (including, without limitation, any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or other transfer tax, mortgage recording tax, or other similar tax or governmental assessment) to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, and the appropriate state or local governmental officials or agents shall not collect any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

# ARTICLE IV

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors own property consisting of residential apartments and commercial spaces. On or prior to the Effective Date, the Debtors shall: (1) upon payment of the corresponding cure amounts set forth in the Debtors' schedule of cure amounts included in the Plan Supplement, (a) assume the Assumed Contracts and (b) at the election of the Purchaser, assign the Assumed Contracts to the Purchaser and (2) reject the Rejected Contracts.

# ARTICLE V

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ....

### A.    Discharge Of Claims And Termination Of Interests.

Except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests of any nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests. Upon the Effective Date, each of the Debtors and the Reorganized Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, *provided, however,* there shall be no any satisfaction, settlement, discharge, or release of any Claims or Interests with respect to any rights or claims solely against Debtor Forte Investment LLC.

**B.      Release Of Liens.**

Except as otherwise expressly provided in the Plan, in this Confirmation Order, or in any

document, instrument or other agreement created in connection with the Plan, on the Effective

Date, all Liens on or against the Sale Assets automatically shall be released upon the transfer of the

Sale Assets to Purchaser (or such other entity(ies) as Purchaser may designate); and the holders of

such Liens shall execute such documents as may be necessary or desirable to reflect or effectuate

such releases; *provided*, *however*, that notwithstanding anything otherwise contained herein, no

mortgages, deeds of trust, liens, or other security interests relating solely to the real property

located at 625 Baltic Street, Brooklyn New York shall be released.

**C.      Releases By Debtors**.

Pursuant to Bankruptcy Code section 1123(b), and except as otherwise specifically

provided in the Plan, upon the Effective Date, the Debtors and their Estates shall release

unconditionally, and hereby are deemed to forever release unconditionally:  (a) Purchaser and the

JV Parties and any of their respective members, officers, directors, managers, employees, equity

holders, partners, Affiliates, advisors, attorneys, consultants, agents or representatives, or any of

their successors or assigns (collectively, the "Released Parties"); and (b) the Debtors' attorneys,

accountants and members, from any and all claims, obligations, suits, judgments, damages, rights,

causes of action and liabilities whatsoever (other than the right to enforce the performance of their

respective obligations, if any, to the Debtors under the Plan), whether liquidated or unliquidated,

fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then

existing or thereafter arising, in law, or other occurrence taking place on or prior to the Effective

Date, except for those claims or liabilities arising out of or relating to any act or omission that

constitutes gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct, *ultra vires* actions, or the disclosure of confidential information that causes damages. Notwithstanding the foregoing, the releases described above shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York State Rules of Professional Conduct.

### D.    Releases By Holders Of Claims And Interests.

In consideration for the distributions made under the Plan, all Holders of Claims and Interests (collectively, the "Releasing Parties") shall be deemed to have been released and discharged by, and to have forever released and discharged the Released Parties, the Debtors and any of their respective members, officers, directors, managers, employees, equity holders, partners, affiliates, advisors, attorneys, consultants, agents or representatives, or any of their successors or assigns, of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, promises, damages, claims and liabilities whatsoever, known or unknown, arising from a Claim or based upon the same subject matter as a Claim or Interest and existing on the Confirmation Date or which thereafter could arise based on any fact, transaction, cause, matter or thing which occurred prior to the Confirmation Date, relating to the Debtors, the Plan or the Chapter 11 Cases, except for those claims asserting gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct, *ultra vires* actions, or the disclosure of confidential information that causes damages; *provided, however*, that Forte Investment LLC shall not be a "Released Party" or "Releasing Party". The release described in the preceding sentence shall be enforceable as a matter of contract. Notwithstanding the foregoing, the releases described above shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York State Rules of Professional Conduct.

### E.    Exculpation.

The Debtors, the Estates, Purchaser and the JV Parties and any and all of their respective members, officers, directors, managers, employees, equity holders, partners, Affiliates, advisors, attorneys, agents or representatives, or any of their successors or assigns, shall not have or incur any liability to any Holder of a Claim or Interests, or any other party in interest, or any of their respective members, officers, directors, managers, employees, equity holders, partners, affiliates, advisors, attorneys, consultants, agents or representatives, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the administration of the Chapter 11 Cases, the negotiation of the terms of the Plan, the Sale Transaction, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, up to and including the Effective Date, except for their willful misconduct, gross negligence, breach of fiduciary duty, criminal conduct, *ultra vires* actions, or the disclosure of confidential information that causes damages, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Cases and the Plan. Notwithstanding the foregoing, the exculpation described above shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York State Rules of Professional Conduct.

### F.    Injunction.

Except as provided in the Plan or this Confirmation Order, as of the Confirmation Date, subject to the occurrence of the Effective Date, all persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors or their

property on account of any such discharged Claim, debts or liabilities or terminated rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action, in each case in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. By accepting any distribution pursuant to the Plan, each Holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Article. Nothing in the Plan or this Confirmation Order shall enjoin the United States Government or any of its agencies or any state and local authority, from bringing any claim, suit, action or other proceedings (whether directly, indirectly, derivatively or otherwise) against the Debtors, or any of the Debtors' members, employees, attorneys, advisors, agents, representatives and assigns, or the Debtors' property, for any liability, including under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority.

**ARTICLE VI**

**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

A.      **Conditions Precedent To Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article VI.B hereof:

1.      The Confirmation Order shall have been entered in a form and substance satisfactory to the Debtors and the Purchaser and shall have become a Final Order;

2.      The Purchase Agreement shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the Purchase

Agreement shall have been waived or satisfied in accordance with the terms thereof, including, without limitation:

      (a)    The earlier to occur of (i) 45 days after entry of the Confirmation Order, as may be extended pursuant to Section 5 of the Purchase Agreement, and (ii) Purchaser having obtained financing of an amount sufficient and on terms reasonably satisfactory to Purchaser in order to fund Purchaser's obligation to pay the Sale Proceeds;

      (b)    Purchaser shall have obtained satisfactory evidence that each unexpired lease encumbering the Sale Assets, in which a Debtor is a lessor, (i) will expire on or before October 31, 2014 (inclusive of any extension, renewal or option), including, without limitation, consummation of the transaction providing for the termination of that certain Lease Agreement, dated June 29, 2007, by and between 111 -113 Fourth Avenue LLC, as landlord, and L and Wang Laundromat Inc., as tenant, for the ground floor of the building located at 113 4th Avenue, Brooklyn, New York (as amended or assigned from time to time), contemplated in that certain term sheet, dated January 9, 2014, by and between T&L Investors Corp. and Top 1 Cleaners Corporation, Inc. as successor-in-interest to tenant, and (ii) is not subject to any rent regulation program promulgated by New York City or New York State or any agency or any regulatory body thereof; and

      (c)    there shall not have been a material adverse change in (i) the value, use or condition of the Sale Assets or (ii) any laws, rules or regulations affecting the use, operation or development rights of the Sale Assets;

      3.    All governmental and material third-party approvals and consents, including Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained and shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

      4.    All documents and agreements necessary to implement the Plan and all actions to be taken thereunder shall have (a) been authorized by the Court pursuant to the Confirmation Order, (b) been tendered for delivery, and (c) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

      5.    All Assumed Contracts shall have been assumed, and if applicable, assigned, and all Rejected Contracts shall have been rejected.

**B.**    **Waiver of Conditions.**

The conditions to the Effective Date of the Plan set forth in Article VI.A. may be waived only by the Debtors with the express prior written consent of Purchaser.

## ARTICLE VII

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

As of the date the Plan is confirmed, the Debtors' cases shall be substantively consolidated and one order confirming the Plan will be binding on the Debtors and all of their creditors.

## ARTICLE VIII

## IMMEDIATELY BINDING EFFECT

Subject to Article VI hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests, all Entities that are parties, or are subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring or receiving property under the Plan, and any and all non-Debtor parties to executory contracts or unexpired leases with the Debtors.

## ARTICLE IX

## PROVISION FOR SUPERVISION OF THE PLAN
## AND RETENTION OF JURISDICTION

The Court shall retain jurisdiction over the Chapter 11 Case for the purpose of determining all disputes relating to Claims and other issues presented by the Plan, to issue such order as may be necessary for the confirmation of the Plan, to fix the compensation of

professionals retained by order of the Court, and to determine all other matters which may be

pending on the date that the Plan is confirmed.  The Court shall retain jurisdiction to resolve all

Disputed Claims.  Objections to Disputed Claims shall be filed no later than sixty (60) days from

the Effective Date. The Disbursing Agent shall pay the non-disputed portion of a Disputed Claim

in accordance with the Plan provisions for payment of a claim in its Class.  This Plan may be

altered, amended, and modified by the Debtors, with express prior written consent of the

Purchaser, before or after the Confirmation Date, subject to certain restrictions and requirements

set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

Dated: Brooklyn, New York
      February 21, 2014


                                By: */s/  Domenick Tonacchio*_____
                                      Domenick Tonacchio, Managing Member